# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

MARLON A. ADKINS,           )
                            )
Plaintiff,                  )
                            )
vs.                         )        No. 3:09-CV-217
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social      )
Security,                   )
                            )
Defendant.                  )

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits and Supplemental Security Income to Plaintiff, Marlon A. Adkins. For the reasons set forth below, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

BACKGROUND

On March 23, 2005, Plaintiff, Marlon A. Adkins ("Adkins"), applied for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. section 401 et seq. and Supplemental Security Insurance ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. sections 1381 et seq. Adkins initially

alleged his disability began on April 7, 2003, the date he suffered a workplace injury when he fell from a semi-trailer and landed on concrete, breaking his hip. (Tr. 210). The Social Security Administration denied his initial application and also denied his claims on reconsideration. On January 8, 2008, Plaintiff appeared with counsel at an administrative hearing before Administrative Law Judge ("ALJ") John S. Pope ("Pope"). Testimony was provided by Plaintiff and Donna Whitcomb (a vocational expert or "VE"). On September 2, 2008, ALJ Pope denied Plaintiff's DIB and SSI claims, finding that Adkins had not been under a "disability" as defined in the Social Security Act.

Plaintiff requested that the Appeals Council review the ALJ's decision. This request was denied. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a)(2005). Plaintiff has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g).


DISCUSSION

Facts

Adkins was born on March 3, 1965, and was 38 years old on the alleged disability onset date. (Tr. 23, 71). Adkins' alleged impairments include a left hip injury with pain, anxiety and depression. Adkins has a GED. (Tr. 407). His past relevant work

includes work as a truck driver, bowling alley mechanic, panel builder, clerk file, cashier, assembler, grinder/machinist, plastics machine operator, and gas station manager. (Tr. 23, 116-38, 153, 430).

The medical evidence can be summarized as follows:

Following his hip fracture on April 7, 2003, Adkins underwent open reduction and internal fixation surgery. He was hospitalized until mid April, when he was transferred to a rehabilitation hospital. He was discharged on April 28, 2003, despite not yet being weight-bearing. (Tr. 212-217).

In May 2003, Adkins sought emergency room treatment for blood in his stool, nausea and vomiting. An x-ray taken at that time indicated his hip fracture was healing. (Tr. 221).

Adkins treated regularly with Dr. Brian Boyer, an orthopedic specialist, following his left hip surgery. (Tr. 272-270). By July of 2003, Adkins could ambulate without a walker, although his gait was abnormal and his hip muscles were weak. (Tr. 266). Adkins received physical therapy and was making progress. (Tr. 222-245). X-rays, however, revealed delayed healing. (Tr. 262).

By March of 2004, x-rays revealed that the hip fracture had healed, but Adkins' gait was still abnormal. Adkins resumed physical therapy. A functional capacity evaluation ("FCE") was conducted in June 2004, and showed that Adkins could perform medium work. (Tr. 285-289). He was able to lift and carry twenty to thirty pounds

occasionally, and ten to fifteen pounds frequently. (Id). He was able to frequently stand and walk so long as he was able to sit and rest as needed. He could bend on a repetitive basis occasionally to frequently. He could occasionally climb, kneel, and squat. But, Adkins continued to complain of left hip pain. (Id).

In August 2004, Adkins underwent surgery to remove his hardware. Shortly thereafter, Adkins reported that his pain was much better, but in the following month, he complained of pain in his left hip and buttock that radiated into his groin. (Tr. 255-256). He had limited internal range of motion of the left hip, but motor and sensory functions were intact. (Tr. 255). The claimant continued to receive physical therapy through November 2004. (Tr. 253-54). By that time, x-rays revealed no new pathology in the hip, and Adkins could walk with only a slight limp. (Tr. 253).

Adkins treated with Dr. Paul H. Demarais, a physiatrist, from 2003 through 2005. (Tr. 206-08 and 340-58). In May 2005, Dr. Demarais provided a letter to the Social Security Administration stating his opinion that Adkins was not completely disabled, but indicating Adkins would have difficulty getting up and down from ladders, climbing in and out of rigs, and carrying a significant amount of weight. (Tr. 307-08).

A consultive exam performed by Dr. Thomas P. Barbour in June 2005 revealed unremarkable findings except for a wide based gait which favored his left leg, stooped posture, overweight, moderate to severe

difficulty getting on and off the exam table, atrophy and tenderness at the left thigh, muscle strength in his left lower extremity graded at 3 to 4 out of 5, abnormal sensation in his left thigh, and decreased range of motion in his left hip. In addition, the claimant could not hop on his left side or squat. His ability to tandem walk was very poor. (Tr. 309-11). Dr. Barbour's impressions included the following: "[p]ersistent hip and left leg pain after injury [that]...interfere with daily activities" and "[c]hronic low back pain, cause unclear, cannot rule out degenerative joint disease or radiculopathy. This problem also continues to improve with daily activities. Prognosis for further improvement is guarded." (Tr. 310).

Adkins treated with Dr. Curry, a family physician, for a time as well. (Tr. 321-339). Dr. Curry's records reveal that he saw Adkins in 2006 and 2007 for chronic left hip pain, twitching in his left foot and toes, urinary frequency, depression, sinusitis, and bronchitis. Adkins' prescriptions at that time included Ultracet, Prevacid, Synthroid, Lexapro, and Lipitor. (Id).

Adkins began seeing a new family physician, Dr. Katherine Lisoni, in October 2007. (Tr. 370). Notes from Dr. Lisoni reveal that Adkins complained of left hip pain, depression, suicidal thoughts, hearing voices at night, difficulty sleeping, heartburn, and epigastric pain. (Tr. 370-375). Physical examination findings were generally unremarkable, except for epigastric tenderness and decreased range of

motion in his left hip.  (Tr. 364-375).  His insight, judgment, and orientation were normal but he exhibited a depressed mood and tearful affect.  (Tr. 372).  His medications at this time included Nexium, Tramadol, Haldol, Fluoxetine, Sertaline, and Ibuprofen.  (Tr. 365, 368-70).  The Social Security Administration requested that Dr. Lisoni complete a form titled "Medical Source Statement of Ability to do Work-related Activities (Mental)", and Dr. Lisoni's office replied by indicating that their office is not equipped to do this kind of extensive evaluation.  (Tr. 383-387).

A mental status examination was conducted at the Social Security Administration's request by Dr. Julie Pelletier in March of 2008.  (Tr. 376-381).  This report reveals that Adkins walked slowly and with a limp.  (Tr. 377).  His allegations included feeling of depression and anxiety following his girlfriend's suicide in 2007.  (Tr. 376).  He reported sleep and appetite disturbances, and suicidal ideations.  (Tr. 377).  He also reported hearing his girlfriend's voice.  He indicated he was not having as many crying spells as he used to have.  The examiner indicated Adkins appearance was somewhat disheveled.  Dr, Pelletier observed in Adkins a restricted affect, depressed mood, difficulty repeating more than three digits backwards, and an ability to recall just two of four items after a ten-minute delay.  (Tr. 377).  Adkins also endorsed some feelings of paranoia.  He was diagnosed with major depressive disorder and anxiety disorder.  (Tr. 278).  Dr. Pelletier's opinion was that Adkins' ability to understand, remember,

and carry out instructions was not limited but that his ability to respond appropriately to usual work situations and to changes in routine work settings was moderately limited. (Tr. 379-80).

Dr. Pelletier's report of Adkins' daily functioning includes the following:

> Mr. Adkins is able to cook for himself sometimes, but he stated that hamburger helper is the most extensive cooking that he will do. He stated that he does not clean like he should, but does try to clean one time every few months. He is not able to afford to do laundry many times, though he can do it when he is financially able. He typically goes grocery shopping one time per month when he gets his food stamps. He stated that it is very difficult for him to do dishes or do anything that causes him to stand for any length of time because of the pain that he feels in his lower back and down his left leg. He does not need any assistance to dress, groom, or bathe himself. However, he did state that people do need to remind him about bathing and especially shaving, and he stated that he does not like to shave because it hurts him to stand up and do so.

(Tr. 378).

State agency physicians who reviewed the medical record but did not examine Adkins found that he was able to lift and carry twenty pounds occasionally and ten pounds frequently, sit or stand/walk for a total of six hours each in an eight-hour workday, and never climb ladders, ropes, or scaffolds. (Tr. 312-319). They also found that Adkins was only occasionally able to balance, stoop, kneel, crouch, crawl, and climb ramps and stairs and that he needed to avoid concentrated exposure to wet, uneven surfaces. (Tr. 312-319). Additionally, although not referenced by the ALJ, the State agency

physicians found that Adkins was limited in his lower extremities with regard to push and/or pull (including operation of hand and/or foot controls). (Tr. 313).

Adkins reported that he could sit for two and one-half hours at a time, stand for thirty minutes, walk for ninety minutes, and lift twenty to twenty-five pounds. (Tr. 425). Additionally, he indicated that he lives alone, that his medications make him drowsy and dizzy three or four times a week. (Tr. 406, 417-18). He is able to care for his personal needs, cook, and grocery shop. (Tr. 420). He is able to do dishes, sweep, and do laundry if he takes breaks. (Tr. 420). He is not able to bend. (Tr. 420). He also reports that he lies down for several hours during the day. (Tr. 418-19). He reports that his depression causes him to have no interest in things. (Tr. 421). He reports seeing his friends and family about once a week, and indicates he is easily irritated by others. (Tr. 423, 427). He feels as if people are talking down to him. (Tr. 423). He reports constant pain from his left knee to his buttocks, and he describes this pain as throbbing or stabbing in nature. (Tr. 423-424). He also reports numbness. He reports that his symptoms are worsened by either sitting or walking too much. (Tr. 424).

Based on the limitations outlined by the ALJ, the VE testified that a hypothetical individual with the claimant's age, education, and work experience, and the residual functional capacity to perform sedentary work with the additional limitations that he is not able to

climb ladders, ropes, or scaffolds, can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, must avoid concentrated exposure to wetness, and is limited to only simple, repetitive tasks, could perform the requirements of representative occupations such as table worker, escort driver, and final assembler. (Tr. 429-435).

## Review of Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence exists, the Court shall examine the record in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or re-weighing evidence. *Jens v. Barnhart*, 347, F.3d 209, 212 (7th Cir. 2003). With that in mind, however, this Court reviews the ALJ's findings of law de novo and if the ALJ makes an error of law, the Court may reverse without regard to the volume of evidence in support of the factual findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

As a threshold matter, for a claimant to be eligible for DIB or

SSI benefits under the Social Security Act, the claimant must establish that he is disabled. To qualify as being disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382(a)(1). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five step evaluation:

Step 1:    Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2.

Step 2:    Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3.

Step 3:    Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4.

Step 4:    Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner.

Step 5:    Is the claimant able to perform any other work within his residual functional capacity in the national economy: If yes, the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v); *see also Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994).

        In this case the ALJ found that Adkins suffers from severe

impairments; namely, status post left hip fracture, depression and anxiety. (Tr. 19). The ALJ further found that Adkins did not meet or medically equal one of the listed impairments, and could not perform any of his past relevant work, but nonetheless retained the physical residual functional capacity to perform sedentary work with the further limitations that he is not able to climb ladders, ropes, or scaffolds, and can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Additionally, he must avoid concentrated exposure to wetness, and he is limited to only simple repetitive tasks. (Tr. 19-20). With these limits in mind, the ALJ found that there are jobs that exist in significant numbers in the national economy that Adkins can perform; namely, table worker, escort driver, or final assembler. (Tr. 24). Thus, Adkins' claim failed at step five of the evaluation process. (Tr. 24-25). Adkins believes that the ALJ committed several errors requiring reversal, each of which will be addressed in turn.


Credibility Determination

Adkins claims that the ALJ failed to properly evaluate the credibility of his testimony regarding symptoms. Because the ALJ is best positioned to judge a claimant's truthfulness, this Court will overturn an ALJ's credibility determination only if it is patently wrong. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). However, when a claimant produces medical evidence of an underlying

impairment, the ALJ may not ignore subjective complaints solely because they are unsupported by objective evidence. *Schmidt v. Barnhart*, 395 F.3d 737, 745-47 (7th Cir. 2005). Instead, the ALJ must make a credibility determination supported by record evidence and be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight given to the claimant's statements and the reasons for that weight. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003).

In evaluating the credibility of statements supporting a Social Security Application, the Seventh Circuit has noted that an ALJ must comply with the requirements of Social Security Ruling 96-7p. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). This ruling requires ALJs to articulate "specific reasons" behind credibility evaluations; the ALJ cannot merely state that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR 96-7p. Furthermore, the ALJ must consider specific factors when assessing the credibility of an individual's statement including:

1. The individual's daily activities;
2. The location, duration, frequency and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effect of any medications the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *see also Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003).

The ALJ's opinion summarizes the medical evidence regarding Adkins' physical impairments, and then concludes as follows:

> The undersigned finds that the claimant is able to perform sedentary work as defined in the Regulations. He is also not able to climb ladders, ropes, or scaffolds and he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to wetness. This is more restrictive than any of the medical opinions of record regarding the claimant's physical condition. It is also consistent with the objective medical evidence, which includes an abnormal gait, decreased range of motion of his left hip, reduced muscle strength in his left lower extremity, and abnormal sensation in his left thigh. His fracture healed within twelve months from the date of injury. He was weight-bearing within a year of his injury. Finally, there is no medical opinion of record and no medical evidence to corroborate the claimant's allegations that he is not able to sit, stand, or walk for prolonged periods, that he needs to lie down for several hours during the day, that he has disabling levels of pain, or that he is able to walk for ninety minutes, that he is able to stand for thirty minutes, and that he is able to sit for two-and-a-half hours. In addition, the claimant is able to live alone, care for his personal needs, and run his household. Thus, the claimant's allegations regarding his physical limitations and levels of pain are not entirely credible.

(Tr. 23).

The ALJ then summarizes the evidence regarding Adkins' mental impairments in one paragraph, and concludes that his testimony regarding his mental impairments is also not credible, as follows:

The only medical opinion of record regarding the claimant's mental condition is from Dr. Pelletier, who conducted a mental status evaluation of the claimant in early 2008. As noted earlier, she opined that the claimant's ability to understand, remember, and carry out instructions was not limited but that his ability to respond appropriately to usual work situations and to changes in routine work settings was moderately limited.

The undersigned finds that the claimant is able to perform simple, repetitive tasks. This is somewhat more restrictive than Dr. Pelletier's opinion but there is no basic disagreement that the claimant is not unable to perform unskilled work. It is also consistent with the objective medical evidence. Although the claimant exhibited a depressed mood and restricted affect, there were no findings that suggested that he was more than moderately limited in his ability to sustain concentration, persistence or pace. He was also generally described as alert, oriented, and cooperative, which is not consistent with disabling levels of anxiety or depression. As noted earlier, the claimant stated that he is able to care for his personal needs, cook, and grocery shop, as well as do dishes, sweep, and do laundry if he takes breaks. These activities too are not consistent with disabling levels of depression or anxiety. In addition, he has not sought counseling nor has he been hospitalized on an inpatient basis for a psychiatric problem since the alleged onset date. Thus, while he has been given diagnoses of depression and anxiety, the claimant's allegations of limitations resulting from these impairments are not credible to the extent that he alleged.

(Tr. 23).

The ALJ relies on both a lack of support for Adkins' allegations in the objective medical evidence and medical opinion, and on Adkins' reported activities of daily living to reject his testimony regarding his physical limitations. With regards to his mental impairments, the

ALJ additionally relies upon his failure to seek counseling and lack of hospitalization for his mental condition.

Adkins argues that a lack of objective medical evidence supporting a finding that pain prevents him from working full time is not enough. The Commissioner, however, points out that the Seventh Circuit has concluded "that a claim of pain may be discounted if it is not borne out by the objective medical evidence." *Walker v. Bowen*, 834 F.2d 635, 641-42 (7th Cir. 1987). Additionally, Adkins' argument fails because ALJ Pope relied on the lack of medical evidence as a factor in his decision, but not the only factor.

Adkins also argues that the ALJ confuses the ability to perform certain daily living activities with the ability to sustain those activities. In *Carradine v. Barnhart*, the Seventh Circuit noted that an ALJ's failure "to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week" was problematic. 360 F.3d 751, 755-56 (7th Cir. 2004). In *Craft v. Astrue,* the Seventh Circuit reiterated its caution to the Social Security Administration "against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." 539 F.3d 668, 680 (7th Cir. 2008). In *Craft* the ALJ relied on various activities of daily living in finding that the claimant was not totally disabled, but ignored the claimant's qualifications as to how he carried out those activities.

Similarly, ALJ Pope states that Adkins engages in a variety of activities, but ignores his statements as to how seldom he does so. For example, Dr. Pelletier reports that Adkins stated that he tries to clean every few months, that he does laundry only occasionally when he can afford it, that he needs to be reminded about bathing and shaving, that he finds shaving painful. (Tr. 378). Adkins may be able to "run his household" as the ALJ observed, but it appears he is running a household of one, and doing it poorly. (Tr. 23). The ALJ apparently credited Adkins' testimony regarding the fact that he engages in certain daily living activities, but discredited his testimony about the pain they produce. This logic has been troubling to the Seventh Circuit. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)("And if she was testifying truthfully and against her interest about her daily activities, why did the administrative law judge think she was lying about her pain?").

Consideration of the claimant's activities of daily living can provide legitimate insight into credibility. For example, in *Simila v. Astrue*, 573 F.3d 503, 518 (7th Cir. 2009), the claimant helped build a log home, replaced a gas tank, attended traveling hockey tournaments, hunted and fished during the time he claimed disability, and these activities were relied upon in discrediting the claimant's testimony. But here the ALJ did not cite to any similar evidence. Rather, he relied on Adkins' mere engaging in basic activities of daily living as a basis to discredit his testimony regarding his

symptoms.

Adkins also argues that the ALJ improperly relied upon Adkins failure to seek counseling.  Specifically, Adkins argues that the ALJ violated his duty under SSR 96-7p, which requires that an ALJ not discredit the testimony of a claimant for failure to seek or follow through on treatment without first considering any explanations provided by the claimant or other information in the case record that may explain infrequent or irregular medical visits or failure to seek medical treatment.  *See Craft v. Astrue,* 539 F.3d a 679.  Here, the record reveals that Adkins was struggling financially.  (Tr. 370). More specifically, Dr. Lisoni's note indicates that Adkins was referred to her clinic due to financial problems, that Adkins is not working, and living through the trustees office and food stamps.  (Tr. 370).  The ALJ did not inquire into the reason that Adkins had not sought further treatment for his mental problems.  The Commissioner argues that the record does not support Adkins' contention that he failed to seek treatment due to financial reasons, and because the record indicated that his mental impairments required only conservative treatment, the ALJ was entitled to consider the conservative nature of Adkins' treatment as one factor to support his credibility findings.  The Commissioner's contention is not well taken.  There was enough evidence in the record suggesting that Adkins' ability to get adequate treatment was adversely affected by financial considerations that the ALJ should have inquired about

Adkins' reason for failing to get counseling.

The ALJ also relies on the fact that Adkins has not been hospitalized for his mental problems to support his conclusion that his symptoms are not that severe. According to Adkins, this is an example of the ALJ inappropriate "playing doctor." *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)("Common sense can mislead; lay intuitions about medical phenomena are often wrong."). This specific argument is not addressed by the Commissioner. Because there is no evidence in the record that severe mental impairments necessarily (or even generally) result in hospitalization, and that conclusion seems untenable, this Court concurs with Adkins that his lack of hospitalization was not a proper basis for discrediting his testimony regarding his symptoms.

The ALJ's explanation for not treating Adkins' testimony as fully credible is inadequate. The facts of record *may* leave room for an ALJ to reach the conclusion that ALJ Pope reached. The problem is not the conclusion, but the failure to explicitly set forth the analysis in the decision. Because the ALJ's decision, adopted by the Commissioner, committed an error of law, reversal is required irrespective of the volume of evidence that *may* support the finding of fact.

Hypothetical Question Posed to Vocational Expert

Adkins also argues that the ALJ committed reversible error when he failed to include certain limitations in his hypothetical question posed to the ALJ; namely, limitations regarding pushing and/or pulling including foot controls in the lower extremities, and limitations in daily living activities, social functioning, concentration, persistence or pace associated with his mental impairments.

An ALJ's hypothetical questions must ordinarily include all limitations supported by the medical evidence in the record. *See Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009). However, the ALJ need not include impairments or limitations that he has properly deemed not credible. *Id.* at 521.

In the physical residual functional capacity assessment form completed by Dr. A. Dobson on June 27, 2005 (Tr. 312-320), Dr. Dobson (an agency physician) concludes that Adkins is limited in his lower extremities with regards to pushing and/or pulling, including operation of foot controls. (Tr. 313). Adkins notes that limitations in the ability to operate foot controls would exclude at least one of the occupations that the ALJ relied upon in finding that Adkins was capable of other work: namely, escort-vehicle driver.

The Commissioner argues that this limitation regarding pushing and pulling in the lower extremities "was not inconsistent with the limitation to a restricted range of sedentary work contained in the ALJ's hypothetical question." (Defendant's Memorandum at 10). More

specifically, the Commissioner argues that "the state agency reviewing physicians' opinion did not reflect that Plaintiff was entirely unable to push and/or pull with his lower extremities; rather, it merely indicated that he was unable to perform pushing and/or pulling with his lower extremities at the light exertional level." (Defendant's Memorandum at 11). Because the ALJ did not find that Adkins could perform work at the light level, but rather limited him to only the sedentary level, according to the Commissioner, "[t]he record does not contain any medical evidence that indicates that Plaintiff was unable to perform pushing and pulling with his lower extremities at the sedentary level of exertion." (Defendant's Memorandum at 11-12).

Limitations with regards to pushing and pulling are not rated by weight restrictions. It is not clear that by limiting Adkins to the sedentary level, his limitations with regards to use of foot controls are adequately taken into account. For example, the ALJ finds that Adkins could work as an escort-vehicle driver, but this would require fairly extensive use of foot controls. This Court finds the Commissioner's argument lacking. The ALJ should have included limitations in the use of foot controls in his hypothetical posed to the VE. The failure to do so is error, although it is perhaps harmless, as the vocational expert found that Adkins can engage in at least two other occupations as well (table worker and final assembler) that do not appear to require the use of foot controls. Although this error may be harmless, this case requires remand for other reasons,

and upon remand the ALJ should specifically consider Adkins' limitations regarding the use of foot controls.

Additionally, the ALJ found that Adkins was limited in his ability to perform activities of daily living, maintain social functioning, and sustain concentration, persistence, or pace. (Tr. 23). The hypothetical posed to the VE indicated that the individual could perform simple, repetitive tasks, but Adkins points out that at least some cases suggest that this limitation does not adequately take into account limitations in concentration, persistence, or pace. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)("The Commissioner asserts that the ALJ accounted for Stewart's limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interaction with coworkers or the general public. We have rejected the very same contention before."); *Craft v. Astrue*, 539 F.3d 668, 677-78 (an ALJ's limiting of a hypothetical to simple, unskilled work does not account for claimant's difficulty with concentration). Adkins concedes that other cases have reached the opposite conclusion. *See e.g. Simila*, 573 F.3d at 521-22 ("We have held that claimants who often experience deficiencies of concentration, persistence or pace are capable of performing semi skilled work, and those who are mildly to moderately limited in these areas are able to perform simple and repetitive light work."(citations and internal quotations omitted)). Adkins, however, also concedes that there is not a medical opinion on file regarding

Adkins' concentration, persistence or pace, and that the only evidence of record on this matter is his testimony; testimony that the ALJ has deemed not credible.

Because the ALJ's credibility determination was flawed, that error carries over to his hypothetical questioning. If the ALJ's credibility determination was legally sustainable, the ALJ's decision to exclude limitations regarding concentration, persistence and pace in his hypothetical questioning of the VE would also be legally supportable. Accordingly, remand is necessary and this Court need not attempt to make sense of the apparent split of opinion on this issue in the Seventh Circuit.

Other Arguments

In addition to the above arguments, Adkins argues that the ALJ failed to consider his mental and physical conditions in combination, as required under Seventh Circuit case law. Adkins correctly indicates that the ALJ is required to consider both mental and physical impairments. *See Mendez v. Barnhart*, 439 F.3d 360, 363 (7th Cir. 2006). However, Adkins argument in this regard consist of only one sentence. He offers no indication as to why he believes the ALJ did not consider both physical and mental impairments together. It is not clear from the opinion that the ALJ failed to consider the impairments together. And, by failing to develop this argument, it is deemed waived. *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir.

-22-

1999)("It is not the responsibility of this court to make arguments for the parties.").

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

**DATED: September 21, 2010**          **/s/RUDY LOZANO, Judge**
                                       **United States District Court**